IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

KHADIJEH MEHRNOOSH,

Plaintiff,

No. CV-10-52-HZ

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

OPINION & ORDER

Defendant.

Alan R. Unkeles
1865 N.W. 169th Place, No. 121
Beaverton, Oregon 97006

Linda S. Ziskin
P.O. Box 2237
Lake Oswego, Oregon 97035

Attorneys for Plaintiff

Dwight C. Holton
UNITED STATES ATTORNEY
District of Oregon

Adrian L. Brown
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

David Morado
REGIONAL CHIEF COUNSEL
Mathew W. Pile
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 221A
Seattle, Washington 98104

Attorneys for Defendant

HERNANDEZ, District Judge:

Plaintiff Khadijeh Mehrnoosh brings this action seeking judicial review of the Commissioner's final decision to deny supplemental security income (SSI). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). I affirm the Commissioner's decision.

PROCEDURAL BACKGROUND

Plaintiff applied for SSI on October 19, 2006, alleging an onset date of November 1, 2004. Tr. 68-74.[1] Her application was denied initially and on reconsideration. Tr. 38, 39. 40-43, 46-47.

On May 6, 2009, plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 17-37. On June 30, 2009, the ALJ found plaintiff not disabled. Tr. 7-16. The Appeals Council denied review. Tr. 1-4.

---

[1] Although her initial SSI application shows an alleged onset date of January 1, 2004, subsequent forms indicate that the date is November 1, 2004, a date which plaintiff confirmed at the administrative hearing. Tr. 23, 76, 68, 83, 87.

FACTUAL BACKGROUND

Plaintiff alleges disability based on degenerative disc disease, a hearing abnormality, migraines, ischemic heart disease, damaged right foot, and status/post stomach cancer with resulting side effects and after-effects of chemotherapy. Tr. 12-13, 23-24, 27, 31 87. At the time of the hearing, she was fifty-six years old. Tr. 21. She has a college degree, and a Master's degree in library science, both obtained in Iran. Tr. 22. She has prior work experience as a pharmacy technician and an interpreter. Tr. 25-26, 33, 88, 118. Because the parties are familiar with the medical and other evidence of record, I refer to any additional relevant facts necessary to my decision in the discussion section below.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated according to a five-step procedure. See Valentine v. Commissioner, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the

claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since her SSI application date in October 2006. Tr. 12. At step two, the ALJ determined that plaintiff had severe impairments of cervical degenerative disc disease and status post stomach cancer and chemotherapy. Tr. 12. At step three, the ALJ determined that plaintiff's impairments did not meet or equal, either singly or in combination, a listed impairment. Tr. 13.

The ALJ next found that plaintiff had the following RFC: the ability to perform light work as defined in 20 C.F.R. § 416.967(b), with the ability to lift and/or carry twenty pounds

occasionally and ten pounds frequently, the ability to stand and/or walk with normal breaks, the ability to sit with normal breaks about six hours in an eight-hour workday, the ability to frequently stoop, crouch, crawl, kneel, and climb ramps and stairs, and the ability to occasionally climb ladders. Id. As part of that determination, the ALJ considered the medical evidence and plaintiff's hearing testimony. Tr. 13-15. As discussed in more detail below, the ALJ found plaintiff's subjective limitations testimony not credible. Id.

At step four, and based on the RFC, the ALJ found that plaintiff could perform past relevant work as a pharmacy technician and interpreter. Tr. 15. The ALJ did not make a step five finding. Based on his findings, the ALJ found plaintiff not disabled. Id.

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." Vasquez, 572 F.3d at 591 (internal quotation and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation omitted).

DISCUSSION

Plaintiff contends that ALJ erred by (1) finding certain impairments non-severe at step two, (2) finding that she did not have an impairment or combination of impairments which met or equaled a listed impairment at step three, (3) finding plaintiff not credible, and (4) finding, at step four, that plaintiff's interpreter work qualified as past relevant work under the Social Security Act (SSA). Defendant concedes the step four error, but contends it was harmless. Defendant disputes that the ALJ erred in any other finding.

I. Plaintiff's Credibility

A. Plaintiff's Hearing Testimony

Plaintiff testified that following treatment for stomach cancer, which included surgery, chemotherapy, and radiation, and which she completed in October 2004, she never regained her strength and as a result, she suffers from low energy. Tr. 23. Despite this, she volunteers twenty hours per week for the State of Oregon Department of Human Services. Tr. 24. She works helping clients fill out paperwork, typically four hours per day, five days per week, but she often does not make it the full five days every week. Id. She takes a five to ten minute break each hour because of fatigue. Tr. 29. She typically starts work at 8:30 a.m. and stays until 12:30 p.m. if her health allows, and then she takes a nap at home for one to two hours. Id.

As a result of a fall in 2005, she hurt her right ankle, which, she testified, continues to be painful with walking or standing. Tr. 26. She also stated that beginning approximately one year prior to the hearing, making the date in May 2008, she began to suffer from migraine headaches. Tr. 27. These occur once or twice each month, and last, at the most, three days. Tr. 27-28. She takes Imitrex which, she explained, helps if she starts it right before the migraine begins. Tr. 28.

She also has a heart problem that causes chest pain. Tr. 35-36.

Plaintiff testified that the main reason she cannot work is fatigue and low energy and "aches and pains all over." Tr. 31. She can lift a few files at a time, but five is probably too heavy for her. Her daughter goes grocery shopping with her and carries items such as a gallon of milk, and her sister, with whom she lives, does most of the household chores. Tr. 29-30. Plaintiff does laundry, although sometimes she has help from her sister, and helps with dishes. Tr. 31. She is able to concentrate when writing something, but she falls asleep after half an hour when watching television. Id.

B. The ALJ's Decision

The ALJ stated that while plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, her statements regarding the intensity, persistence, and limiting effects of her symptoms "are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. 14. The ALJ explained that the overall record and objective medical evidence did not support the alleged severity of the symptoms and limitations. Id. Additionally, the ALJ found that her volunteer work and duties were inconsistent with her allegations of total disability. Tr. 15. While her primary care physician opined in September 2006 that plaintiff was capable of working six hours per day for five days each week, the ALJ found this opinion entitled to "only some weight" in light of the evidence of record. Id.

C. Discussion

The ALJ is responsible for determining credibility. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). Once a claimant shows an underlying impairment and a causal relationship

between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'").

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. Id.

Additionally, the ALJ may consider objective medical evidence in determining a claimant's credibility regarding subjective symptom testimony, as long as the ALJ does not reject such testimony solely because it is unsubstantiated by the objective medical evidence. 20 C.F.R. § 416.929(c); Rollins v. Massanari, 261 F.3d 853, 856, 857 (9th Cir. 2001) ("Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain[;] . . . . While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (internal quotation and brackets omitted) .

Plaintiff contends that the ALJ erred because he failed to give specific reasons for rejecting plaintiff's testimony and because his credibility assessment is legally unsupportable. As for the latter, plaintiff contends that the ALJ engaged in circular reasoning when he stated that the "claimant's symptoms concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. 14. Had the ALJ not discussed specific reasons supporting this statement in subsequent paragraphs of his opinion, I would agree with plaintiff. It would, in fact, be improper and untenable to reject plaintiff's symptoms as inconsistent with an RFC when the RFC is the product of, not the basis for, the credibility assessment.

But here, the ALJ followed this statement with three reasons for rejecting plaintiff's testimony: it was not supported by the objective medical evidence, it was not supported by the overall record, and it was inconsistent with plaintiff's volunteer work. As for the objective medical evidence, the ALJ cited to several specific pages in the record supporting his finding that plaintiff's physical examinations following her cancer treatment were grossly normal, she was consistently found to be doing well, and had no evidence of recurrent disease. Id. The ALJ cited to reports of plaintiff's treating physicians indicating that her energy was better. Id. Notably, in one of the exhibits cited by the ALJ, Dr. Lewis, plaintiff's treating oncologist, stated that in January 2005, plaintiff was interested in having Dr. Lewis release her from doing a "job work" program, but Dr. Lewis "believe[d] her energy level [was] adequate at this time to be able to participate in such activities." Tr. 274 (Exh. 3F). The ALJ also cited to normal x-rays of plaintiff's spine. Tr. 15.

Additionally, the ALJ discussed that plaintiff's volunteer work for the Department of

Human Services for up to twenty hours per week for more than two years, which included helping clients fill out applications, answering phones, setting up files for caseworkers, and assisting workers there, was inconsistent with her testimony that she was totally disabled. Tr. 15. As indicated above, an ALJ may properly reject plaintiff's subjective testimony if it is inconsistent with a claimant's daily activities.

The ALJ's reference to the "overall record" is vague and unhelpful. It is also inconsistent with well-established caselaw requiring the ALJ to provide specific reasons for disbelieving a claimant. E.g., Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010) (ALJ must provide "specific, cogent" reasons for discrediting testimony). Nonetheless, because the ALJ did not rely solely on the lack of objective medical evidence in rejecting plaintiff's testimony, but also noted her ability to volunteer at least twenty hours per week, his opinion is supported by substantial evidence in the record and his credibility determination was not error.

II. Step Two Severity Finding

Plaintiff argues that the ALJ erred at step two because he improperly found several impairments to be non-severe, and he ignored plaintiff's hearing impairment. The ALJ found plaintiff's right ankle disorder, migraine headaches, and exercise-induced ischemia to be non-severe impairments. In her discussion, plaintiff focuses her argument only on the ALJ's non-severity finding regarding her migraines.

The ALJ explained that at the hearing, plaintiff testified that her migraine symptoms were controlled with Imitrex. Tr. 12. He then stated that because there was no objective medical evidence to show that the impairment caused significant vocational limitations for at least twelve consecutive months, the migraine headaches were not a severe impairment. Tr. 12-13.

The ALJ considers the severity of the claimant's impairment(s) at step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement, or a combination of impairments that is severe and meets the duration requirement, the claimant is not disabled. Id.

A severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" are the abilities and aptitudes necessary to do most jobs, including physical functions such as walking, standing, sitting, and lifting. 20 C.F.R. §§ 404.1521(b), 416.921(b). In Social Security Ruling (SSR) 96-3p (available at 1996 WL 374181, at *1), the Commissioner has explained that "an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities."

Plaintiff contends that her treating doctors have documented her migraine headaches on several occasions. But, the records she cites do not fully support her assertion, nor do other records in the administrative record.

The first record cited by plaintiff is a September 1, 2006 clinic visit note by primary care provider Dr. Ezra Azhar, M.D., which contains no report of any subjective complaint of headache pain, and no indication on objective examination of any headache or neurological findings revealing any headache or migraine-related impairment. Tr. 130. The assessment portion of the record includes "Headache #346.11" which may or may not refer to migraines. Id. There is no indication of a longstanding problem or of medication being prescribed for the

problem. Id. In the section for "plan," plaintiff had a head CT scheduled for September 5, 2006. Id. The other record cited by plaintiff is the report of the September 5, 2006 head CT which states, under "clinical history," "[c]onstant headaches times three weeks, no trauma" and which found no abnormalities, resulting in a negative exam. Tr. 309. The clinical history section of that record does not refer to the headaches as being migraine headaches. Id.

Additionally, aside from the September 1, 2006 clinic visit to Dr. Azhar, there appear to be only three other mentions by plaintiff to Dr. Azhar of her headaches. On December 20, 2005, plaintiff stated she had been getting headaches. Tr. 141. Yet, there are no objective findings, Dr. Azhar's assessment fails to indicate any headache-related diagnosis, and there is no mention of any headache-related diagnostics, treatment, or medication in the "plan" section of his chart note. Id. On March 28, 2006, plaintiff again reported headaches, but, as with the December 20, 2005 visit, there are no objective findings, no assessment of any headache-related diagnosis, and no mention of any headache-related treatment. Tr. 138. On May 30, 2006, plaintiff complained of a headache for two days. Tr. 135. No other subjective report of the condition is noted, and there are no relevant objective findings. Id. The assessment section refers to "Headache #346.11," but there is nothing related to her headaches in the "plan" section of the clinic visit note. Id. Notably, despite subsequently seeing Dr. Azhar on June 21, 2006, June 30, 2006, August 25, 2006, and October 2, 2006, the chart notes do not show that plaintiff ever mentioned her headache on any of those occasions. Tr. 129-34.

Additionally, while there is one mention in March 2005 to Dr. Lewis, her treating oncologist, of intermittent headaches which had been improving, Tr. 273, chart notes from subsequent visits to Dr. Lewis, including some during the same period of time in which she

complained to Dr. Azhar about headache pain, show that plaintiff denied headaches. Tr. 267 (May 6, 2005), 284 (Nov. 21, 2005), 174 (Feb. 13, 2006) , 169 (May 9, 2006), 165 (Aug. 7, 2006). Plaintiff overstates the record when she argues that her treating doctors have documented her migraine headaches on several occasions. As the ALJ noted, there is no objective medical evidence to show that the alleged migraine headaches caused significant vocational impairment at any time, much less for the twelve-month required duration.

Plaintiff contends that the lack of an objective cause is typical of migraine headaches and thus, the ALJ's finding that there are no objective medical records to support a finding that the migraine impairment is severe, is not supportable. See Ortega v. Chater, 933 F. Supp. 1071, 1075 (S.D. Fla.1996) (explaining that present-day laboratory tests cannot prove the existence of migraine headaches). But, while there may not be a laboratory or blood test to confirm a migraine disorder, and it may be that radiologic studies do not always reveal an objectively-defined source of migraine pain, it is possible to present objective-like evidence to establish the severity of the claimed impairment such as the treating physician's personal observations of any physical manifestations of pain, chart notes reflecting ongoing attempts at treatment with medication(s), trips to the emergency room or hospital admissions for disabling migraine pain, a record of associated symptoms, or other similar evidence. See Id. (although no laboratory test could confirm presence of severe migraines, claimant's doctor "set forth the medical signs and symptoms sufficient to justify the diagnosis and treatment of migraine headaches" including "nausea, vomiting, photophobia, dizzy spells, and black outs" many of which "are, in fact, medical signs which are associated with severe migraine headaches."). No evidence of this type is in the record. Moreover, the mere diagnosis of a condition “says nothing about the severity of

the condition." Higqs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). Additionally, courts have regularly upheld an ALJ's determination that claimed migraine pain was not severe or disabling because of the lack of objective medical evidence. E.g., McCormick v. Secretary of Health and Human Servs., 861 F.2d 998, 1002-03 (6th Cir.1988) (affirming the Secretary's denial of benefits to a claimant who was unable to "introduce objective medical evidence to support the existence of [her] alleged migraine headaches"); Allen v. Astrue, No. 09-1508, 2011 WL 9609, at *7 (W.D. Pa. Jan 3, 2011) (ALJ properly found no objective evidence of migraines when MRI and other radiologic tests showed no abnormality). Based on the record, the ALJ did not err in concluding that there was no objective, or objective-like, evidence in the record supporting a finding of severe migraines.

The ALJ also noted that plaintiff's migraines were controlled with Imitrex. Tr. 12. Plaintiff argues that this statement misconstrues her testimony. Plaintiff testified that the medication helps if she takes it at the right time before the headache starts, and she sometimes takes it anyway even if it is too late. Tr. 28. While the ALJ possibly overstated the effect of the medication by using the word "controlled," the claimant bears the burden at step two to demonstrate that the impairment is severe. Without additional evidence regarding how frequently the medication produces, or fails to produce, symptom relief, I cannot conclude that the ALJ's interpretation of her testimony is error. See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir.2008) (recognizing that "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation").

Plaintiff also argues that even if the migraines are not a severe impairment, the ALJ must still consider the effects and limitations of all impairments on her RFC. 20 C.F.R. § 416.945(e).

Here, however, the only evidence of the impact of plaintiff's migraines on her functional capacity is plaintiff's own testimony, which the ALJ discredited. Thus, the ALJ did not err in failing to incorporate plaintiff's alleged migraine-related symptoms into the RFC.

Next, plaintiff argues that the ALJ completely ignored evidence of her hearing loss, making no finding as to the existence and severity of this impairment. The medical record contains the following references to plaintiff's hearing loss: (1) a statement in a September 12, 2005 letter to Dr. Azhar from cardiologist Dr. Todd A. Caulfield, M..D., regarding the results of an exercise stress test, that plaintiff's past medical history included right-sided hearing loss; Tr. 229; and (2) a statement in a June 24, 2005 letter to Dr. Azhar from otolaryngologist Dr. Edsel U. Kim, M.D., that plaintiff had a "long history of right-sided hearing loss and tinnitus" which plaintiff believed may be related to stress. Tr. 265. Dr. Kim saw plaintiff for complaints of consistent bilateral ear pain. Id. He diagnosed her with temporomandibular joint disorder. Id.

Defendant concedes that the ALJ failed to mention the hearing loss in his decision. Defendant argues that first, this was not error because the ALJ need discuss only significant, probative evidence, and two reports in the record which refer to a past medical history of hearing loss do not establish, without more, any specific functional limitations. Alternatively, defendant argues that any error was harmless because as plaintiff acknowledges in her argument, the alleged impairment would have likely only affected plaintiff's ability to work as an interpreter. Because defendant no longer relies on that past work in defending the ALJ's decision, any error made by the ALJ has no effect on the determination at step four. Because I agree with defendant as to its alternative argument, I do not address its former argument.

Assuming the ALJ erred in failing to discuss hearing loss, any such error was harmless.

Plaintiff contends that the hearing impairment "would likely" impact her ability to sustain work as an interpreter. Pltf's Op. Mem. at p. 11. As the ALJ in this case resolved the disability analysis at step four, the burden to establish disability remained on plaintiff. Plaintiff failed to set forth evidence at her hearing, or point to evidence in the record, documenting the actual hearing loss (as opposed to a reference to a past medical history of such loss), the degree of the hearing loss, and more importantly, documenting the actual functional limitations caused by the impairment. Thus, at this point, plaintiff's argument that the hearing impairment "would likely" impact her ability to perform any occupation is supposition. In any event, the ALJ’s failure to discuss the hearing loss is harmless because defendant no longer relies on the interpreter occupation for past relevant work.

In summary, the ALJ did not commit error at step two, or alternatively, if he did, the error was harmless.

III. Step Three Listed Impairment Finding

Plaintiff argues that the ALJ failed to conduct a proper step three analysis because even non-severe impairments must be considered in determining if she met or equaled a listed impairment. Additionally, she argues that the ALJ failed to fully consider the effects of her chemotherapy and radiation treatment when assessing the equivalence to a listed impairment.

The ALJ analyzed plaintiff's back symptoms under Listing 1.04, regarding disorders of the spine. Tr. 13. The ALJ concluded that those symptoms did not meet or medically equal Listing 1.04 because there was "no objective medical evidence showing upper or lower extremity muscle weakness, reflex loss or objective sensory deficit, motor loss, or positive straight leg raise." Id.; see 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.04. Plaintiff states that the ALJ

failed to consider that plaintiff's degenerative disc disease is in her cervical spine.

I disagree. The ALJ specifically referred to upper extremity deficits in his analysis, indicating that he considered the cervical region of the spine in his discussion. Additionally, plaintiff, who bears the burden of proof at step three, fails to cite to evidence in the record supporting her argument that her cervical spine disorder was severe enough to meet or equal the requirements of Listing 1.04.

As for the side effects of her chemotherapy and radiation treatment, plaintiff fails to identify any particular listing she contends the ALJ should have discussed, and she fails to cite, other than her subjective testimony, any other evidence documenting her ongoing fatigue and lack of stamina. The ALJ did not err at step three.

IV. Step Four Finding

Plaintiff argues that the ALJ erred by concluding that plaintiff's past work as an interpreter was past relevant work (PRW). Prior work is not PRW unless it is performed at a substantial gainful activity (SGA) level. See 20 C.F.R. §§ 404.1565(a), 416.965(a). (PRW is work that was performed in the last fifteen years, lasting long enough for the claimant to learn the work, and which qualifies as "substantial gainful activity"); 20 C.F.R. §§ 404.1510, 416.910 (substantial gainful activity is work that involves doing significant and productive physical and mental duties, and is done, or intended, for pay or profit).

Defendant concedes that plaintiff's interpreter work was not PRW, and abandons reliance on that occupation at step four. However, the ALJ also found that plaintiff could perform her PRW as a pharmacy technician. Tr. Tr. 15-16. Plaintiff argues that the ALJ erred in this finding because plaintiff testified it entailed "a lot of standing and running around" which plaintiff could

no longer do after injuring her foot or ankle in the fall of 2005. Tr. 24. Plaintiff notes that the RFC finding that plaintiff can perform light work, entailing the ability to stand and walk for six out of eight hours, and the finding that she could perform the pharmacy technician job at the light exertional level, is inconsistent with her testimony.

But, as explained above, the ALJ did not err in rejecting plaintiff's subjective testimony. Thus, the ALJ did not err in concluding that plaintiff could perform her PRW as a pharmacy technician based on her age, education, work experience, and her RFC.

Finally, given the lack of error at step four, there is no basis to apply the Medical-Vocational Guidelines which is part of the step five analysis. See Bray v. Commissioner, 554 F.3d 1219, 1223. n.4 (9th Cir. 2009) (in making step five determination, ALJ may rely on Medical-Vocation Guidelines, (the "decisional grids")). Because the ALJ's analysis concluded at step four, the grids are inapplicable.

CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this 31st day of May, 2011

/s/ Marco A. Hernandez
Marco A Hernandez
United States District Judge